GREENFIELD & GOODMAN, LLC
Ilene Freier Brookler
(SB No. 269422)
7162 Beverly Blvd.
Los Angeles, CA 90036
(323) 230-5732
ibrookler@gmail.com

Richard D. Greenfield
250 Hudson Street-8th Floor
New York, NY 10013
Telephone: (917) 495-4446
whitehatrdg@earthlink.net

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CV11·00776 VBK

| | |
|---|---|
| MICHAEL S. BERLIN, | Civil Action No. |
| Plaintiff, | |
| vs. | |
| JOHN E. SEAGO, PETER C. CARMICHAEL, SEAGO & CARMICHAEL, PLC, JOHN LANDREM, URSULA STABINGER- FASEL, KONRAD MEYER, CHARLES STENBECK, M. MICHAEL MARKOW and PRIDE BUSINESS DEVELOPMENT HOLDINGS, INC. | COMPLAINT<br><br>JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

Plaintiff, by his undersigned counsel, alleges the following based upon the investigation of counsel, except as to the allegations specifically pertaining to his own acts, which are based upon personal knowledge.

## NATURE OF THE ACTION

1

1. This action, brought under applicable federal securities law and common law, seeks the recovery for plaintiff of his damages in connection with the fraudulent sale to him of shares of defendant Pride Business Development Holdings, Inc.("Pride" or the "Company") by the defendants. Those named as defendants in this action were all participants in a plan and scheme to fraudulently induce plaintiff and others to invest in Pride based upon false and misleading representations including a purported "Projection Summary" dated June 9, 2008, a purported "Business Plan" and various press releases.

2. This action involves a fraudulent scheme perpetuated by the defendants that concealed from plaintiff and other potential investors in Pride the true financial and operating condition of the Company and its prospects for succeeding as a viable company.

3. Upon information and belief, defendants, acting collectively as the "Pride Conspiracy," preyed on individuals such as plaintiff who, however intelligent, are unsophisticated financially and who are unable to test the validity of the representations that defendants made to them. Such deception, carried on by the defendants, was the linchpin of a broader fraudulent scheme to profit from such conduct and to misrepresent and withhold truthful material information from the public about their scheme.

4. As a direct consequence of the oral and written representations made by the defendants to him, plaintiff, on August 14, 2008, wire transferred the sum of $200,000 to defendants John E. Seago, Peter C. Carmichael and their law firm, Seago & Carmichael, PLC (acting as participants in the aforesaid plan and scheme and as a conduit for funds raised from victims in the United States). Plaintiff received, in exchange, an interest in Pride which was either worthless at the time of his purchase or was rendered worthless shortly thereafter by the acts of the defendants, causing plaintiff at least $ 200,000 in damages.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78aa, and 28 U.S.C. §1331 and pursuant to the Court's pendent jurisdiction. The claims asserted herein arise under Sections 10(b), 20(a) and 20A of the Exchange Act, Rule 10b-5 promulgated by the SEC, 17 C.F.R. §240.10b-5 and applicable common law.

5. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b) and (c). Pride's purportedly principal executive offices were located in this District, all defendants transacted business in this District and many of the acts and transactions constituting the violations of law alleged herein, including the preparation, issuance and dissemination of materially false and misleading statements to plaintiff and the investing public, occurred in this District.

6. In connection with the acts, conduct and other wrongs alleged herein, defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and national securities markets.

**THE PARTIES**

**A. THE PLAINTIFF**

7. Plaintiff M.S. Berlin is an individual who, at all relevant times, lived and had his principal office within this District.

**B. THE DEFENDANTS**

8. Defendant Pride Business Development Holdings, Inc. is a Nevada corporation formerly doing business within this District and, according to the SEC, is

3

now located in Metairie, Louisiana. The defendants have held Pride out as a manufacturer of specialty and protective clothing and materials for law enforcement, military and dangerous materials handling markets under the "Bodyguard" brand name and otherwise. Pride's shares had been registered with the SEC pursuant to Exchange Act Section 12(g). Pride was delinquent in its periodic filings with the SEC, having not filed any periodic reports since it filed a Form 10-QSB/A for the period ended September 30, 2006, which reported a net loss of over $17 million for the prior nine months. As of February 16, 2010, the Company's stock (symbol "PDVG") was quoted on the Pink Sheets. As a result of the foregoing, the Company failed to comply with Exchange Act Section 13(a) and Rules 13a-1 and 13a-13 or 13a-16 thereunder. Following Pride's failure to respond to the SEC's Order of February 18, 2010, on April 8, 2010, James T. Kelly, an Administrative Law Judge revoked Pride's registration with the SEC, finding that the "Exchange Act Section 13(a) and the rules promulgated thereunder require issuers of securities registered pursuant to Exchange Act Section 12 to file with the Commission current and accurate information in periodic reports..... Specifically, Rule 13a-1 requires issuers to file annual reports and Rule 13a-13 requires domestic issuers to file quarterly reports. As a result of the foregoing, [Pride] failed to comply with Exchange Act Section 13(a) and Rules 13a-1 and 13a-13 thereunder." At relevant times, Pride had as a subsidiary a corporation, Bodyguard, Inc. ("Bodyguard"), located at 1230 Calle

Suerte, Camarillo, CA 93012. Bodyguard purportedly has a place of business at 17505 48th Place North, Plymouth, Minnesota 55446 and has held itself out as a subsidiary of Pride. Bodyguard shares were purportedly spun off to Pride's shareholders on or about December 3, 2009, although plaintiff has never received any such shares. Bodyguard's powers, rights and privileges in the State of California have been forfeited.

9. Defendant John Landrem is an individual who, at all relevant times, is an individual who had been residing within this District 24700 W. McBean, Canyon County, Santa Clarita, CA 91351. Defendant Landrem, who held himself out as a lawyer and used the title "Dr." before his name, was or is Chairman, President and Chief Executive Officer of Pride. Defendant Landrem, through the plans and scheme described herein, conducted business in connection with the Pride Conspiracy within this District including, *inter alia*, soliciting the investment of funds from plaintiff and other prospective investors within this District.

10. Defendants John E. Seago and Peter C. Carmichael are lawyers who, together with their law firm, Seago & Carmichael, PLC ("S&C") of 8126 One Calais Avenue, Suite 2C, Baton Rouge, Louisiana 70809, through the plans and scheme described herein, conducted business in connection with the Pride Conspiracy within this District including, *inter alia*, soliciting the investment of funds from plaintiff and other prospective investors within this District and not returning such funds after

5

written demand upon them.

11. Defendant Konrad Meyer is an individual who, at relevant times, was incarcerated and is now believed to be residing in Switzerland. Defendant Meyer, through the plans and scheme described herein, conducted business in connection with the Pride Conspiracy within this District including, *inter alia*, soliciting the investment of funds from plaintiff and other prospective investors within this District.

12. Defendant Ursula Stabinger-Fasel is an individual who, at all relevant times, was a companion of defendant Meyer residing in Switzerland. Defendant Stabinger-Fasel, through the plans and scheme described herein, conducted business in connection with the Pride Conspiracy within this District including, *inter alia*, soliciting the investment of funds from plaintiff and other prospective investors within this District.

13. Defendant Charles Stenbeck is an individual who, at all relevant times, was a protege of defendant Landrem residing in this District. Defendant Stenbeck, through the plans and scheme described herein, conducted business in connection with the Pride Conspiracy within this District including, *inter alia*, soliciting the investment of funds from plaintiff and other prospective investors within this District.

14. Defendant M. Michael Markow is an individual who, at all relevant times, was a protege of defendant Landrem residing in this District. Defendant Stenbeck, through the plans and scheme described herein, conducted business in

6

connection with the Pride Conspiracy within this District including, *inter alia*, soliciting the investment of funds from plaintiff and other prospective investors within this District.

15. Because of the defendants' positions within and/or related to Pride, they all had access to adverse undisclosed material information about the likely financial condition, earnings and expenses of Pride and, most significantly, the legitimacy of their projections for Pride's and Bodyguard's business. They were each were privy to such undisclosed information from internal corporate documents, communications among themselves and with others. They each knew or were deliberately reckless in not knowing of the adverse material facts which rendered the statements and proposed business plans for Pride and Bodyguard as alleged by them were false and misleading.

16. The defendants had a duty to disseminate complete, accurate and truthful information about the business prospects, financial condition, earnings and expenses and capitalization of Pride to plaintiff and other prospective investors. The defendants had a duty to promptly correct any statements made or issued by any member of the Pride Conspiracy with respect to Pride that had become false and misleading. The defendants, together with their legal counsel, were involved in the drafting, producing, reviewing and/or dissemination of the false and misleading written statements, including the Business Plan as alleged herein. Further, each of defendants Landrem, Markow and Stenbeck, during the times that they were personally in control of Pride, were obligated to cause the Company to file timely and accurate reports with the SEC which they failed to do.

7

17. Because of their respective positions as senior executives of Pride, together with the other individual defendants who are identified herein as part of the Pride Conspiracy, including their ability to exercise power and influence with respect the course of conduct described herein and their access to material inside information about Pride, each of such defendants were, at the time of the wrongs alleged herein, controlling persons of Pride within the meaning of Section 20(a) of the Exchange Act.

18. It is appropriate to treat the defendants as a group for pleading purposes and to presume that the false, misleading and/or incomplete information conveyed in the purported information conveyed by them or any of them orally and in documents as alleged herein are the collective action of all the defendants identified above.

## SUBSTANTIVE ALLEGATIONS

19. Defendants violated the federal securities laws in several ways. First, defendants issued false and misleading statements and controlled persons who issued false and misleading statements in violation of Sections 10(b) and 20(a) of the Exchange Act and the common law of the State of California.

### Defendants' False And Misleading Statements

20. During the relevant time period, one or more of the defendants, acting for the Pride Conspiracy, issued and disseminated a series of false and misleading statements to plaintiff in violation of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5. These statements fall within several categories:

(a) the defendants issued false and misleading statements regarding the business prospects of Pride representing, *inter alia*, that based on governmental contracts "in hand," Pride would generate at least $80 million in revenues and

substantial earnings in 2009. In fact, no such contracts were "in hand; rather, Pride at the point plaintiff's investment was solicited, was operating "hand to mouth."

(b) the defendants issued false and misleading statements regarding the likelihood that they would raise the capital necessary in order that Pride would expand its business beyond the government contracts it already and/or supposedly had, including the development of new products.

(c) the defendants failed to disclose to plaintiff the fact that defendant Seago had previously been involved in a similar investment fraud and named as a defendant in *United States v. Cavin, et al,* reported at 39 F. 3d 1299 (5th Cir 1994) and that defendant Meyer had been incarcerated for his participation in an investment scheme, the details of which are presently unknown to plaintiff.

(d) defendants Meyer, Landrem and Stenbeck met with plaintiff in this District in early June, 2008, in order to "pitch" an investment in Pride to him. At such meeting, they falsely told plaintiff about various purported government contracts which were about to generate massive returns for Pride and its subsidiaries, which would lead to plaintiff earning substantial profit on his investment. In fact, such contracts were largely "wishful thinking" or knowingly fabricated by defendants Meyer, Landrem and Stenbeck. Further, they failed to disclose that Pride was badly in need of capital, that it was and had been losing money and had not been filing required documents with the SEC as the Company was required to do. Indeed, the defendants did not disclose to plaintiff that Pride was delinquent and had not filed any periodic reports with the SEC since it filed a Form 10-QSB/A for the period ended September 30, 2006.

(e) The defendants failed to disclose that Pride and defendant Markow had not responded to the Complaint filed in *Vestal Venture Capital v. Pride Business*

*Development Holdings, Inc. et al.*, Civil Action No. 07-cv-9936 (S.D.N.Y.) and had subjected such defendants to a Default Judgment in the amount of $364,947 which, upon information and belief, was unpaid at the time plaintiff's investment in Pride was being solicited.

(f) the defendants misrepresented the use that would be made of funds raised by their solicitations and failed to disclose the amounts that would be paid to each of them including, *inter alia*, the funds paid by plaintiff to defendants Seago, Carmichael and their firm.

(g) The defendants repeatedly misrepresented the extent to which Pride's senior officers had "contacts within the United States government" and, in particular, within the Defense Department and within the United States Congress which, according to defendants, were virtually certain to result in the awarding of "significant government, military and GSA contracts." In fact, no such "contacts" existed except in a most superficial way.

## **DEFENDANTS ENGAGED IN A SCHEME TO DEFRAUD**

21. The conduct alleged above gives rise to liability under Rule 10b-5(a) and (c). Defendants are liable as participants in a scheme, plan and course of conduct to conceal the true operating and financial condition of Pride as well as its business prospects generally. Such scheme operated as a fraud and deceit on plaintiff by failing to disclose material facts and misleading him.

22. As detailed below, defendants conspired with one another and each knowingly or with deliberate recklessness, committed manipulative or deceptive acts in furtherance of the scheme including (a) causing and/or permitting the dissemination of false and misleading news releases and other communications to plaintiff; (b) failing to make timely and adequate disclosure of, *inter alia*, Pride's

failure to timely file required documents with the SEC, the foregoing Default Judgment, the history of defendants Meyer and Seago and the likely consequences thereof given the circumstances of Pride; and (c) defrauding plaintiff out of $200,000.

23. Indeed, despite being aware of the consequences of their fraudulent conduct, defendants nevertheless knowingly engaged in the alleged misconduct upon which plaintiff personally relied. Only after some of the truth finally emerged and when the defendants would not provide any information to plaintiff as to what had happened with his investment or with Pride, plaintiff learned that he had been defrauded. Indeed, since his investment in Pride, plaintiff sought information from defendants Meyer and Stabinger-Fasel as to what had happened at Pride and, in particular, with the money he had invested. As to each inquiry, they just gave plaintiff a "run-around." Similarly, plaintiff made inquiries of defendant Seago on August 24, 2009 and, through his counsel, presented the following questions to defendants Seago and Carmichael on October 18, 2010 and received no responses:

1. Who drafted the Pride "Projection Summary" dated June 9, 2008, a purported "Business Plan" and various Pride press releases?
2. Did you and/or Mr. Carmichael play any role in drafting any of such documents or any Pride filing with the SEC?
3. What connection exists or existed between you and John Landrem?
4. Was he ever a client of your firm?
5. Did you and/or your firm perform any legal services for Pride?
6. What was the nature of those services and when were they performed?
7. What are John Landrum's current home and business addresses?
8. Have you ever been paid for acting as a fiduciary in connection with Pride? Did you or your firm retain any of the $200,000 wired to you by Dr. Berlin? How much? Did you separately bill Pride or anyone else for acting as a fiduciary with respect to the $200,000 paid by Dr. Berlin?
9. To whom did you pay the funds provided to you by Dr. Berlin? How much did you pay each such person or entity and when did you do so? Who provided you with instructions as to the disbursement of the funds you received from Dr. Berlin or other Pride investors?

10. Precisely what dealings did you have with Ursula Stabinger-Fasel, Konrad Meyer, Charles Stenbeck and/or M. Michael Markow in connection with Pride or otherwise?
11. How, when and through whom did you get involved with Pride?
12. Did any other investors in Pride securities (other than Dr. Berlin) provide money to your firm? If so, from whom, in what amounts and when?
13. When did you last have any contact with any of the following: Pride, John Landrem, Ursula Stabinger-Fasel, Konrad Meyer, Charles Stenbeck and/or M. Michael Markow? Which of these individuals have you personally met or had communications with?
14. Why did you not respond to Dr. Berlin's letter to you of August 24, 2009?
15. What do you regard as the culpability of Ursula Stabinger-Fasel and Konrad Meyer in connection with Dr. Berlin's investment in Pride?
16. What documents do you have to demonstrate that their allegations with respect to you are false?
17. What do you regard as your legal responsibilities to Pride and its shareholders?
18. From whom did you learn that Pride shares were sent to Dr. Berlin?
19. Which lawyers were responsible for Pride's filings with the SEC?

## **NO SAFE HARBOR**

24. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements or omissions of material facts pleaded in this Complaint, despite the inclusion of a "boilerplate" paragraph appearing on page 2 of the Pride "Business Plan" presented to plaintiff. None of the specific statements or the practices underlying them as to Pride's then existing and previous history were forward looking when made. Many of the specific statements alleged herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does

apply to any forward-looking statement, these statements are actionable because, at the time any forward-looking statement was made, the particular speaker knew that the particular forward-looking statement was false and/or the forward-looking statement was authorized and/or approved by an executive officer of Pride who knew that those statements were false when made.

## CLAIMS FOR RELIEF

### COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

25. Plaintiff repeats and restates each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

26. During the time periods when they were directors and/or officers and/or promoters of investments in Pride, defendants carried out a plan, scheme and course of conduct which was intended to and did: (a) deceive the plaintiff as alleged herein; and (b) cause plaintiff to purchase Pride securities and to do so at an artificially inflated price.

27. In furtherance of this unlawful scheme, plan and course of conduct, defendants, individually and jointly in conspiracy with one another, took the actions set forth herein. Indeed, defendants: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices and a course of conduct which operated as a fraud and deceit upon the plaintiff in an effort to induce him to purchase Pride securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Each of the defendants was a direct, necessary and substantial participant in the common course of conduct alleged herein.

28. In addition to the duties of full disclosure imposed on defendants as a result of their making affirmative statements and providing documents and other information to plaintiff, defendants had a duty to promptly disseminate truthful information that would be material to plaintiff in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. §210.1-01, *et seq.*) and Regulation S-K (17 C.F.R. §229.10, *et seq.*) and other SEC regulations, including accurate and truthful information with respect to Pride's financial condition, losses and expenses and management integrity so that the funds paid by plaintiff for the Pride securities purchased by him would be based on truthful, complete and accurate information.

29. Defendants, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to misrepresent and to not disclose, *inter alia*, adverse material information about the financial and operating condition of Pride, the quality of and problems within Pride's purportedly operating companies, the lack of real prospects for the governmental and other contracts that were purportedly underway and/or about to be signed, and the personal histories of defendants, particularly those of defendants Seago and Meyer.

30. Defendants employed devices, schemes and artifices to defraud while in possession of material adverse information and engaged in acts, practices and a course of conduct as alleged herein in an effort to deceive and/or mislead plaintiff concerning, *inter alia*, the operating and financial condition of Pride, the deteriorated circumstances of it and its purported operating subsidiaries, and management competence and integrity. Said schemes, devices, acts and artifices included: (a) the making of or participation in the making of untrue statements; (b) the omitting of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in

transactions, practices and a course of conduct which operated as a fraud and deceit upon the plaintiff.

31. Defendants' material misrepresentations, omissions and acts in furtherance of the fraud were done knowingly or with deliberate recklessness and for the purpose and effect of misrepresenting to plaintiff, *inter alia,* the operating and financial condition of Pride and its purported operating subsidiaries, as well as the other material problems referred to herein, to plaintiff to purchase Pride securities.

32. As a result of the above alleged fraudulent scheme and dissemination of the materially false and misleading information regarding the foregoing issues and in ignorance of the fact that he was being victimized by defendants, plaintiff paid them $200,000 and was damaged thereby.

33. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

34. At the time of said misrepresentations and omissions, plaintiffs was ignorant of their falsity and had no reason to believe that the defendants' direct and indirect representations to him regarding Pride and its business prospects were not true. Had plaintiff known of the true operating and financial condition of Pride and and the other material facts concealed from him as referred to herein, plaintiff would not have purchased or otherwise acquired Pride securities or, if he had purchased and/or otherwise acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

35. As a direct and proximate result of defendants' wrongful conduct, plaintiff suffered damages of more than $200,000 in connection with his purchase of Pride securities.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

36. Plaintiff repeats and restates each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

37. The defendants acted as controlling persons of Pride and used it as a vehicle to defraud plaintiff within the meaning of §20(a) of the Exchange Act. By reason of their participation in and/or awareness of the actual condition of Pride at the time they were inducing plaintiff to invest therein and/or their intimate knowledge of the fraudulent scheme described herein, the false financial statements and other deceptive documents and their participation in the fraudulent acts and/or awareness of such acts, these defendants had the power and authority to control and cause Pride and its employees to engage in the wrongful conduct complained of herein. By reason of such conduct, the defendants named herein are liable to plaintiff pursuant to §20(a) of the Exchange Act.

38. As set forth above, defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons of Pride, the defendants are liable to plaintiff for his damages pursuant to Section 20(a) of the Exchange Act.

39. As a direct and proximate result of the defendants' wrongful conduct, plaintiff suffered damages in connection with his purchase of Pride securities.

## COUNT III

### (Breach of Fiduciary Duty Against Defendants Seago, Carmichael and S&C)

40. Plaintiff repeats and restates each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

41. Defendants Seago, Carmichael and S&C, acting in concert with the other

16

defendants, acted as a fiduciary with respect to the funds plaintiff paid into their trust account. In accepting such funds from plaintiff, they took on fiduciary obligations to him including the duty to act in his best interests. Upon information and belief, after improperly retaining a portion of the funds plaintiff paid over to defendants Seago, Carmichael and S&C in breach of their fiduciary duties to him, such defendants paid over the remainder to their co-conspirators to use for indeterminate purposes inconsistent with the planned "use of proceeds" that had been told to plaintiff.

42. As a result of the breach of fiduciary duties owed to plaintiff by defendants Seago, Carmichael and S&C, plaintiff has been damaged to the extent of $200,000 for which damages such defendants are responsible.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A. Awarding compensatory damages in favor of plaintiff against defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing in an amount of $200,000 or such larger amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

B. Awarding plaintiff his reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

C. Such other and further relief as the Court may deem just and proper.

## Demand For Trial By Jury

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff hereby demands trial by jury.

DATED: January 26, 2011          GREENFIELD & GOODMAN, LLC

*/s/ Ilene Brookler/*
Ilene Freier Brookler
(SB No. 269422)
7162 Beverly Blvd.
Los Angeles, CA 90036
(323) 230-5732
ibrookler@gmail.com

OF COUNSEL:

Richard D. Greenfield (RG4046)
GREENFIELD & GOODMAN, LLC
250 Hudson Street, 8th Floor
New York, N.Y. 10013
(917) 495-4446

COUNSEL FOR PLAINTIFF

GREENFIELD & GOODMAN, LLC
Ilene Freier Brookler (SB No. 269422)
7162 Beverly Blvd.
Los Angeles, CA. 90036
Phone: (323) 230-5732

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BERLIN, <br><br> PLAINTIFF(S) <br> v. <br><br> JOHN E. SEAGO, PETER C. CARMICHAEL, SEAGO & CARMICHAEL, PLC, JOHN LANDREM, URSULA STABINGER- <br> See Attached <br> DEFENDANT(S). | CASE NUMBER <br><br> **CV11·00776** VBK <br><br><br> SUMMONS |

TO: DEFENDANT(S): John E. Seago, Peter C. Carmichael, Seago & Carmichael, PLC, John Landrem, Ursula Stabinger-Fasel, Konrad Meyer, Charles Stenbeck, M. Michael Markow, et al.

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Ilene Freier Brookler_____, whose address is _7162 Beverly Blvd., Los Angeles, CA. 90036_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: January 26, 2011

By: **JULIE PRADO**
Deputy Clerk
(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                    SUMMONS

```
 1  GREENFIELD & GOODMAN, LLC
    Ilene Freier Brookler
 2  (SB No. 269422)
    7162 Beverly Blvd.
 3  Los Angeles, CA 90036
    (323) 230-5732
 4  ibrookler@gmail.com

 5  Richard D. Greenfield
    250 Hudson Street-8th Floor
 6  New York, NY 10013
    Telephone: (917) 495-4446
 7  whitehatrdg@earthlink.net

 8
```

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL S. BERLIN, | Civil Action No. |
| Plaintiff, | |
| vs. | |
| JOHN E. SEAGO, PETER C. CARMICHAEL, SEAGO & CARMICHAEL, PLC, JOHN LANDREM, URSULA STABINGER- FASEL, KONRAD MEYER, CHARLES STENBECK, M. MICHAEL MARKOW and PRIDE BUSINESS DEVELOPMENT HOLDINGS, INC. | COMPLAINT<br><br>JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

Plaintiff, by his undersigned counsel, alleges the following based upon the investigation of counsel, except as to the allegations specifically pertaining to his own acts, which are based upon personal knowledge.

## NATURE OF THE ACTION

1